## Thompson et al. *versus* Bank of Gettysburg.*

The maker of a negotiable note, although released by the indorsers, is not a competent witness to show an equity existing against the note at its date to defeat a recovery in whole or in part.

ERROR to the Common Pleas of *Adams County.*

The plaintiffs in error were defendants below.

Assumpsit, upon a promissory note of which the following is a copy:—

$2014 94. May 15, 1849.

Four months after date I promise to pay unto T. Stevens, James A. Thompson and R. Smith, or order, at the Bank of Gettysburg, two thousand and fourteen dollars and ninety-four cents, without defalcation, for value received.

M. C. CLARKSON.

* This case was before in this court, for report of which see ante, page 114.

Indorsed—Thaddeus Stevens,
          James A. Thompson,
          Robert Smith.

Protested September 18, 1849.

Credit indorsed on note, April 1st, 1851, $900 00.

Stevens was not served.

Plaintiff read the note with the protest and indorsement in evidence and rested.

Defendants offer in evidence deposition of Michael C. Clarkson, taken on a commission issued out of the Court of Common Pleas of Adams County, to Chicago, in the State of Illinois, on November 10, 1856 (the said M. C. Clarkson having been fully released by the indorsers, as per release dated August 16th, 1857, attached to his deposition), and in connection therewith offers to prove, by the testimony of Michael C. Clarkson, and by other testimony, "that in August, 1841, there being then a note in bank of which said Michael C. Clarkson was drawer, and the defendants, with T. Stevens, were indorsers, for the accommodation of the drawer, for about $7,500—said M. C. Clarkson turned over to said bank sundry good and collectable notes and obligations, to an amount equal to his said note in bank, and made assignments, and left the notes and such assignments with the bank; said bank to collect the said securities and apply the proceeds, less cost of collection, to said Clarkson's note in bank, and any and all renewals thereof—said note to be renewed from time to time. That among said securities was a note for $550 00, drawn by David Little for the payment of said sum to said Clarkson, at ninety days after date, and dated the 25th December, 1838, with interest due thereon from the 25th March, 1839.

"That at the time of such delivery and assignment of said note on said David Little (August 16th, 1841), and for five years afterwards, said David Little was a man of substance, possessing a large amount of property, and of ability to pay said note; and during all said period no measures were taken by said bank to make collection of said note.

"That in 1846, said David Little became insolvent, and failed while said note was in the hands of said bank, and has ever since been, and now is, not of ability to pay said note, but has been and is insolvent, and that no credit has been given by said bank on account of said Little's note, which said note has, through the negligence and neglect of the bank in not collecting it, become worthless and lost.

"That none of the said notes and obligations delivered and assigned by said M. C. Clarkson to the bank, have been delivered to said maker with their consent, nor to the said indorsers (the defendants), nor in any way accounted for to them,

and that after this great lapse of time, and by reason of the said bank holding them in its exclusive control, and its neglect to collect and apply them, or their proceeds, to said note in bank, they have been rendered wholly unavailable and worthless to said defendants, although they were and are entitled to the benefit of them.

"They offer in evidence herewith an assignment by Clarkson to said bank of two bonds for $1,800, with interest from the 1st of April, 1839, given by a certain Peter Sheets and George Myers to the said Michael C. Clarkson; also, an assignment by the same of a note, drawn by a certain Walter Smith, for $800 00, payable to said Michael C. Clarkson, or order, with interest from 9th May, 1837; also, an assignment of claims of said Michael C. Clarkson against certain contractors on the Gettysburg Railroad, for $1,526 50, according to a statement in hands of J. B. McPherson, cashier, accompanying the same; also, an assignment to the said bank by said Michael C. Clarkson, of two notes drawn by James D. Paxton & Co., one for $1,000, with interest from June 7th, 1837, and the other for $500 00, with interest from July 6th, 1838, both payable to said Clarkson—with the indorsement thereon; all of which said assignments are dated the 6th day of August, 1841, and are marked and designated Nos. 1, 2, 3, 4 and 5, respectively, as per schedule of same herewith; also, an assignment made January 28th, 1842, by said M. C. Clarkson to said bank, of a note drawn by James D. Paxton & Co., in favor of said Clarkson, bearing date November 9th, 1837, for $2,959 44 (said assignment being designated No. 6 in said schedule), to be credited on note of said M. C. Clarkson for $5,435, a renewal of said note of $7,500 00; and also said note on James D. Paxton & Co.

"And further, to prove that all of said assignments, with said obligations, &c., were deposited with said bank, to be by it collected and applied to the payment of the said original note of said Clarkson for $7,500, and all subsequent renewals thereof; the said note to be renewed from time to time; and that said collaterals were all good and collectable, and have not been applied or accounted for by said bank."

To this plaintiff objected, that Clarkson, the maker of the note in suit, is an incompetent witness to prove the facts for which his testimony is offered, being transactions which occurred long prior to the giving of the note in suit.

The offer is objected to as irrelevant and incompetent for the purpose of defeating the plaintiff's claim on the note in suit. The whole referring to transactions long prior to the 15th May, 1849, and already decided by the Supreme Court, in this case, that they cannot now be "used to resist the plaintiff's

claim without violating the rules of law and equity" applicable to the case.

The court, FISHER, J., sustained the objections and rejected the evidence, and this is the error complained of.

Verdict for plaintiff, $1,878 31.

*McConaughy* and *Miller*, for plaintiffs in error, cited *Harrisburg Bank* v. *Foster*, 8 Watts, 304; *Pennypacker* v. *Umberger*, 10 Har. 492; *Himblewright* v. *Armstrong*, 1 Cas. 428; 2 Greenleaf's Ev. page 170, sec. 207; 2 do. page 470, sec. 570; 13 Penn'a St. R. 313; 15 id. 236; *Downcy* v. *Gerard*, 12 Har. 52; *Hamilton* v. *Hamilton*, 6 id. 22; *McCoon* v. *Galbraith*, 5 Cas. 295; *Johnston* v. *Humphreys*, 14 S. & R. 394; *Alexander* v. *McMurray*, 8 Watts, 509; *Philadelphia W. & B. R. R. Co.* v. *Cowell*, 4 Cas. 339.

*Wills* and *Hepburn*, for defendants in error, cited *Post* v. *Avery*, 5 W. & S. 509; *Patterson* v. *Reed*, 7 W. & S. 144; *Reading R. R. Co.* v. *Johnson*, id. 317; *McClellan* v. *Mahon*, 1 Barr, 364; *Grayson's Appeal*, 5 Barr, 395; *Heatz* v. *Snyder*, 2 C. 511; *Bailey* v. *Knapp*, 7 Har. 192; *Lewis* v. *Henchman*, 2 Barr, 416. *United States* v. *Simpson*, 3 Pa. R. 437; *Mundorf* v. *Singer*, 5 W. 172; *Letcher* v. *Bank of Commonwealth*, 1 Dana, 84; *Castleman* v. *Holmes*, 4 Marshall, 3.

The opinion of the court was delivered June 30th, 1859, by

THOMPSON, J.—The material point of inquiry in this case is whether M. C. Clarkson, the drawer of the note, on which this suit was brought, was a competent witness for the indorsers. He was not objectionable on the score of interest, for he was released by them, and a failure to recover against them would be no bar to a suit by the bank against him. The record would not be conclusive in such a contest.

Was he incompetent on the score of public policy? The answer to this question is to be found in the nature of the evidence which was proposed to be given by him. It was a direct attack upon the validity of the note itself by an attempt to show an equity existing against it, at its date, sufficient in part, if not in whole, to defeat it, and equivalent to want of consideration; that it was received by the bank under an arrangement made ten years before, to apply the proceeds of certain collaterals to the extinguishment of an indebtedness to it by the drawer, for the remnant of which indebtedness the note in suit was alleged to be brought. The drawer was clearly incompetent to prove this.

The case of *Walton* v. *Shelly*, 1 Term Reps. 276, has been followed by the court in a modified form, as a rule of the law

merchant. Since the case of *Pleasants* v. *Pemberton,* 2 Dall. 196, down to the present day. "The rule," said Mr. Justice Knox, in *Pennypacker* v. *Umberger,* 10 Har. 492, "is firmly established in Pennsylvania that a party to a note or bill that is strictly negotiable, and has been actually negotiated, cannot be a witness to impeach it." Here the offer was not only to prove by the drawer that the note was not negotiated in the actual course of business, but the existence of an equity sufficient to extinguish it at the moment of its execution. This would flatly contravene the rule, and the evidence was rightly rejected. The evidence being properly excluded, the learned judge was right in charging "that there being no evidence in the case upon which the jury could find for the defendants, the verdict should be for the plaintiffs." This disposes of the whole case against the plaintiffs in error.

Judgment affirmed.